It's our second case this morning. People of the State of Illinois v. Bobby Jimerson. Attorney Borland is here on behalf of the appellant. Attorney Shepard is here on behalf of the appellee. Ms. Borland, are you ready to proceed? Good morning, Your Honors. Again, my name is Caroline Borland. I represent the appellant, Mr. Jimerson. May it please the Court, as this Court is aware, we have raised four issues in the brief. In the interest of time, today I plan on focusing on our first issue, regarding the denial of the self-defense instruction, and then may possibly, if time permits, touch on some of the prosecutorial misconduct we've alleged in Arguments 2 and 4. When the trial court denied Mr. Jimerson's request for a self-defense instruction in this case, it took away one of the most important issues in this case out of the hands of the jury. The law is clear that there only need be slight evidence to support a self-defense instruction. However, in this case, there was substantial evidence. Indeed, the question was presented by both sides of the case. First, looking just at the State's evidence, Marshall, the victim, testified to two different versions of the offense. During direct examination, she says that she's in a verbal dispute with Mr. Jimerson, and then all of a sudden he picks up a bat and starts to hit her with that bat, striking her in the arms. Then on cross-examination, defense counsel gets her to admit she talks about a different series, where she says she actually got a fork and was trying to attack Mr. Jimerson with that fork, and defense counsel asks her two specific questions. So you were the one that initiated physicality in this case. She says yes. Then he also says, so Mr. Jimerson was defending himself, is that right? She says yes. The law is clear, indeed, in every single case cited by both the State and the defense here, that there only need be some evidence. It can either be from the State's case or from the defendant's case. And when there is some evidence of self-defense, then the judge should give that instruction to the jury. So first, Marshall's testimony in and of itself, the State's case, presented this question of self-defense. And that was even enough to give the instruction to the jury. Of course, that wasn't the only testimony in this case. Mr. Jimerson also testified, and he actually provided testimony that has two different ways that the jury could have viewed this evidence. So specifically, his testimony was, when Marshall came after him with the fork, he could not just stand there. So there was a bat nearby. He picked up the bat. He put it in the air. He says, look, you stop it, or I'll pluck you. And then a struggle ensued over that bat, and Marshall grabbed onto the bat. They struggled over it until ultimately she fell, and then he ended up leaving the apartment. First, this provides even more support for self-defense if the jury believed that Mr. Jimerson committed the act described by Marshall. It's further testimony that whatever actions he took, he did because he did not believe he could just stand there. Of course, Mr. Jimerson did deny hitting Marshall as she claimed. He said there was only this struggle. But that testimony also still showed a different theory of self-defense. This was his complete defense, his meaningful defense. He says, I didn't hit her as she claimed, but I did try to act in self-defense. I did pick up this bat. I did engage in this struggle with her. And as defense counsel argued when requesting this self-defense instruction, the jury could have found from that evidence that maybe Marshall received her injuries during that struggle. And then that was also then a different version of self-defense. The trial court ultimately denied the instruction for one and only. Yes? Could you explain that for me? In other words, the jury could have inferred that there was some other contact besides defendant hitting her with the bat in order for her to have sustained the injuries that she did? Yeah. I think, I mean, when Mr. Jimerson testifies, he says he gets this bat. He puts it up in the air. She drops her fork at that point, and they get engaged in this struggle. And it's so much of a struggle that she ends up falling down to the ground. He ultimately says that's when he lets her go. When he lets go of the bat, she falls to the ground. I think the jury could make a reasonable inference from that that maybe she was injured during that struggle. And so that's how we view that there. And that's under his complete version of the evidence, because he does admit that he picked up the bat and was using force. If it was simply a matter, if there was no question that the evidence was she claimed she was hit with the bat and no question that he denies hitting her with the bat, but also attempts to raise self-defense, would his repeated statements that he did not hit her preclude him from raising self-defense? Our position is no, because that evidence still came from her testimony on cross-examination, where she says he was acting in self-defense. So there's a case we've cited, People v. Everett. It's an Illinois Supreme Court case that says a defendant may receive a self-defense instruction, even when it's completely inconsistent with his own testimony. Of course, the state has said that that was a case where the defendant, and validly said, that that was a case where the defendant only, he admitted he accidentally used force, and there have been some appellate court cases that the state has cited which has limited Everett to that instance and said, well, when you accidentally use force, you're admitting to the use of force so you can still get the instruction, but when you wholly deny force, you can't get that instruction. But we would argue that those cases are incorrectly decided. Again, well, first of all, before even considering whether they were incorrectly decided, they all were premised on the fact that there was no evidence of self-defense presented at all. They all said he had to admit to using force because there was also no evidence in the state's case or other evidence presented by the defense. But also, their logic was based on one fundamental principle. It's that when a defendant denies using force, they say he's undermining the two elements that he both subjectively and reasonably believed that force was necessary. And so, if that's true, that would be the same instance with a defendant who claims force was only accidental. If he says, I didn't mean to hit someone, like the defendant did in Everett, but it was only accidental, it also tends to weigh against both the reasonable and subjective belief that he believed force was necessary. But the Illinois Supreme Court, relying on centuries-old precedent, says that's okay. You get the right to inconsistent defenses. The jury can pick and choose what it believes. If there's some evidence presented, that's it. And I think recently, I mean, I think that's clear. Ultimately, that goes to the weight of the defense. So when the jury's considering the evidence, they can sit down and say, okay, he's denying that he actually took that force. I wonder if that means he didn't reasonably believe force was necessary, and therefore, there's no self-defense. But it should not be something that precludes obstruction, and that's what Everett holds. And again, I think this case is even more compelling because Marshall's testimony on cross-examination did present evidence of self-defense as well. And again, the one and only reason why the trial court did deny this instruction, it actually said, I'm going to go ahead and give this instruction. Presumably, that implies that it found there was some evidence to support, but then when the state said below, you can't do that because he denied the instruction, the court said, okay, I want the record to be crystal clear, that's the reason why I'm denying it. But where the issue was truly simple, there was some evidence presented of self-defense, the trial court should have given that instruction. And indeed, since this was the critical issue in this case, presented by both sides, it was crucial, and that's why Mr. Jimerson was prejudiced from not receiving that instruction. There are two different standards of review that we have to look at in a situation like this, right? In terms of whether or not evidence existed sufficient to support a self-defense instruction, and that's to be reviewed de novo, right? Right. Then there's an abuse of discretion standard to be applied. What are we to review in this case under the abuse of discretion standard? I mean, that would be, ultimately, it would be whether the trial court's ruling was arbitrary, fanciful, and unreasonable, essentially is what that would be. Which ruling? The ruling denying the self-defense instruction. So basically, since he said there was some evidence, or he didn't say that, but implicit in his finding that he would have given the instruction otherwise, it implies that he did find some evidence existed. Of course, this court is free to engage in a de novo review of that, but then his ultimate ruling saying, but I'm not going to give the instruction, that would be where abuse of discretion comes in. But again, here, he based that ruling on what we would argue is an incorrect understanding of the law, so therefore that shows that it was an abuse of discretion. And also, as this court has recently held, have you all received my motion to cite additional authority regarding the Willett case? I think I found it on Friday. Okay, then I won't rely on it. But basically, the ruling was, the decision is, is there some evidence? And that was what he was supposed to find. So since there was some evidence, his discretion was very limited in that regard. Weighing the evidence, determining if it was credible, that was for the jury. So where self-defense was truly presented by both parties in this case, and where Jimerson did have the right to present a complete theory of defense, he had the right to have the jury say, he had the right to explain to the jury, it's not true what she happened. He doesn't have to admit to committing the act she says. He just has to provide a theory of self-defense. And I would particularly note one final point on this part. When the jury was given instructions on finding aggravated and domestic battery in this case, the instructions said whether Mr. Jimerson knowingly, by any means, caused injuries to Ms. Marshall. So specifically, since the jury did not need to find that he hit her with a bat, as Ms. Marshall claimed, he should have been entitled to present his theory of the defense, from which the jury could reasonably infer that Ms. Marshall had been injured from his struggle. And just the trial court's refusal of that instruction, for the one and only reason that he did not admit to committing the act she alleged, was erroneous. And I think I do have time. I will touch briefly on three of the points we've raised in arguments two and four of the brief. Where the trial court took the central issue in this case out of the hands of the jury by denying the self-defense instruction, the issue then became a pure credibility contest. It was a he said, she said case. The jury was to determine to believe Marshall when she said that Jimerson hit her with a bat, or to believe Jimerson when he said he did not. In that instance, the prosecutor then took that decision largely out of the hands of the jury by engaging in several improper tactics, which specifically said that the case had already been decided once the judge denied the self-defense instruction, and that both she and Officer Cookson, the lead investigator in this case, believed Marshall. First, as we've addressed in argument two of the brief, the prosecutor told the jury that despite everything they had heard about self-defense at this trial, Jimerson ultimately could not get that instruction, because he had not been able to show that Marshall did anything that justified his use of force. In fact, as we've already discussed today, or as I've already discussed, the judge had denied the instruction solely because it believed that Jimerson did not actually present self-defense in this case. It even said, I want the record to be crystal clear. I'm not giving this instruction because Jimerson denied force. So when the prosecutor said he lost the chance to have the instruction because he did not get Marshall to admit to anything that would have justified force, she deliberately misrepresented the facts before the jury. Cases are uniformly clear that conduct like this will not be tolerated. Here, it prejudiced Mr. Jimerson in several ways. First of all, by reminding the jury of how much Jimerson had fought for this defense, and then ultimately saying he lost it on cross-examination, it implied that Jimerson's testimony, which came after his defense attorney cross-examined Marshall, was this last-minute Hail Mary, okay, I can't raise self-defense, so I may as well deny committing this crime entirely. In a credibility case, that was greatly prejudicial. At the same time, it bolstered Ms. Marshall's testimony because there was this inconsistency between her testimony on direct and redirect versus cross-examination. She says on cross-examination, I acted first, and then on redirect, she says Jimerson acted first. So when the prosecutor is telling the jury, Jimerson lost this instruction because his defense attorney could not get Marshall to admit to anything on cross-examination, she unfairly bolstered Marshall's testimony when that was a key issue to be resolved by the jury. And perhaps most egregiously, the way that the prosecutor framed this argument, saying that Marshall could not get the instruction, strongly implied that the judge made that decision. The jury was certainly aware that legal decisions were made by the judge. The judge even told the jury, I will instruct you on the law. So when the prosecutor told the jury that Marshall could not get the instruction, it implied that the judge denied that instruction. Certainly, learning that the judge had denied the defense that Jimerson was going after, certainly implied to the jury that Jimerson must be guilty. His defense failed. The judge doesn't believe him. All of these things made the jury more likely to accept the state's case. And then briefly, this issue of bolstering this thing of this case has already been decided, basically, was further advanced when the prosecutor told the jury that both she and the investigating police officer believed Marshall. First, during Jimerson's cross-examination, after he had said he did not hit Marshall with a bat, the prosecutor said to him, I believe you did hit her with a bat, Mr. Jimerson. Prosecutors are not permitted to give their opinion on an ultimate issue in the case before the jury. These cases recognize that the prosecutor holds this special relationship with the jury. She's an agent of the people. They take what she says as true. So whenever she reveals her opinion, it's something that's viewed as very prejudicial, appropriately. Here, this wasn't an instance where the prosecutor was merely saying in closing argument, you know what? I believe the evidence should show that Marshall was guilty. I believe you should, or that Marshall was telling the truth. I believe you should believe her. This was something that was very remarkable and left a good impression on the jury. She directly challenged Mr. Jimerson with her opinion in that regard. That was improper, and it further upset the credibility decision to be made by the jury. And then, finally, if all of that wasn't enough, if it wasn't enough to say that the case had already been decided basically by the denial of the self-defense instruction, and it wasn't enough to give her opinion, she also put Officer Cookson's opinion on Marshall's credibility improperly before the jury. Specifically, that occurred when Officer Cookson says, when he arrived at the scene, he observed Marshall's injuries. The prosecutor says to him at that time, and were those injuries consistent with what you learned happened in this investigation? He says, yes. Police officers, or any lay witnesses, are not permitted to give their opinion on an ultimate issue in the case unless the state proves that they are in a better position than the jury to reach that opinion. Here, the state did not present Officer Cookson as an expert, and the jury was also given photographs of the injuries on Marshall's arms. So, therefore, Cookson was not shown to be in a better position than the jury to determine if they were consistent with her account. What are you suggesting is the ultimate issue that the officer testified to? I think that it was because it bolstered her credibility. He's saying her injuries were consistent with what occurred. And so I'm saying that that would have been prejudicial by telling the jury that the officer found her injuries consistent when that was a decision for the jury to make. And it became particularly prejudicial in the manner in which the prosecutor relied on that. In closing, first an initial summation, she says, you know how you believe Marshall? She says, Marshall told you what happened, and she's corroborated. She's corroborated by Officer Cookson, who says her injuries were consistent with what occurred. Then, after defense counsel gets up and goes at great length about the fact that he doesn't think her injuries were consistent, he says cuts aren't consistent with being struck by a bat, the prosecutor then says, I know defense counsel told you that, but you know what? He's not a medical doctor. He's not an expert in domestic violence. Officer Cookson is, and he told you they were consistent. So this was an issue, a critical issue in the case, and it greatly affected how the jury would view this evidence. If the jury did not find her injuries were consistent, then that, of course, affects her credibility. So by the prosecutor both improperly eliciting this opinion when Officer Cookson was not shown to be an expert, and in then relying on it to ask the jury to find Marshall credible, upset the jury's deliberations. If this court does not have any further questions, I will conclude. I don't see any. Thank you, Ms. Borland. We'll have some additional time on rebuttal. Ms. Shepard? May it please the court. As to issue one, the cases that the state cited in our brief about can't give self-defense instruction where the defendant denies using any force are not affected or overruled by the Supreme Court's decision in Everett. They focus on the self-defense element that requires that the defendant actually and subjectively believe that a danger existed which required the use of the force applied. And they say if he denies using force, he can't establish. There's no evidence. There's not some evidence of that element. What about his struggle over the bat? Struggle over the bat? Defendant said that the victim came at him with a fork. He picked up the bat. He was near his bedroom where they kept the bat. He picked up the bat. He held the bat. He told her, you stop it or I'll pluck you. She dropped the fork. And then he said that she grabbed the bat, wrestled with it. He let go. And then she fell backwards and fell backwards on the bed. So he still denied that he used any force. And he was saying that he just held the bat. She took it, wrestled with it, and then he let go. So there's no force used. And his testimony that what was I supposed to do, that is not enough to say that there was some subjective belief in the use of the force applied because he didn't use any force. He repeatedly said, I didn't use any force. Well, Counsel, isn't Everett pretty clear that what we really need to focus on is whether or not there is a sufficient amount of evidence regarding self-defense instruction? And is Counsel correct that it only has to be a minimal amount? And in this situation with the struggle over the bat, in addition to the testimony from the alleged victim, wasn't there enough? Everett does talk about there only has to be some evidence, but there has to be some evidence of each element. And Everett, the state would point out, actually supports the state. It's distinguishable in that there the defendant admitted that he killed the victim. But in fact, in Everett, the Supreme Court affirmed the denial of self-defense instructions and did it partially on the ground that he denied intentionally using force and claimed the force was accidental. It was a pure accident case. It was unlike the cases in Robinson, which the court in Everett described and cited with approval, where you've got accident plus self-defense. So, of course, the key is what it always is. So are we back to there is insufficient evidence of self-defense? So, I'm sorry. And you're saying that Everett supports the state because it was allegedly accidental. So there really is no allegation. There's no one taking the position that there was sufficient evidence of self-defense. Exactly right in Everett. Yes. In Everett, the defendant only said that he used force. The only force used was accidental. And so it relied on his mental state, and he couldn't show that he reasonably believed in the use of force because he said it was accidental. I was not acting intentionally. And here we have a situation where the defendant is saying, she's coming at me with a fork, I pick up a bat, and we struggle with that bat after she drops the fork. And we have the victim saying, at least at one point, I started it, I was coming at him with a fork, and he was defending himself. She did say he was defending himself, but the state's position is that that's not enough to, she wasn't talking about the legal elements of self-defense. And still, though, the element that we're talking about that the case turns on is, or one of the elements, the main element, is his subjective belief. So he has to say, I believe, or provide testimony that shows that he reasonably believed that his use of force was necessary. And he says I don't use any force. Is there an inference to be drawn? I mean, you say that she wasn't talking about it in legal terms. I take it you're not taking the position that he has to state it in legal terms as far as his testimony. Isn't it a reasonable inference if someone says she has a fork, and she's coming at me, and I pick up a bat and say, you know, stop it or I'm going to pluck you. Isn't there a reasonable inference to be drawn from that, that he's preparing to defend himself from the person who's coming at him? Preparing to, but he said that he didn't actually use any force. Picking up a weapon and using force, different things, different things. So your position is that he has to actually at least attempt to strike her with the bat before he can say he's defending himself? He said I never touched her. I never did anything to her. I didn't use any force. How does the fact that you have his testimony that, you know, he picked up the bat, he's holding it up, and he's basically warning her, and then she grabs the bat. So the fact that she grabs the bat and he does not swing the bat at her, you're saying that's still not self-defense because he didn't get a chance to swing the bat at her? He didn't use any force. He was just holding the bat. He didn't even say that I did anything or took a stab. Well, struggling over the bat with her and, you know, trying to maintain control over it, is that force? No, in itself, and also she was not injured as a result of that struggle. Well, according to his testimony, wasn't the nature of her injury a result of him struggling over the bat, him letting go, allowing her to then deal with the force of holding the bat and falling? No, Your Honor, he didn't testify that she was injured in that struggle, that was asserted by counsel on appeal. In fact, he said, I don't know how she got injured. It was probably self-inflicted. He claimed that he didn't know how she got injured. He didn't offer any testimony as to her falling after they struggled with the bat? He did say that she wrestled with the bat. I got tired of it, and I let go of the bat. She fell backward on the bat. Okay. Counsel, is the abuse of discretion standard implicated in this issue of whether or not the trial court should have instructed the jury regarding self-defense? Your Honor, of course the cases do say that there are two standards that apply, and we look at, of course the court looks at de novo whether or not there was evidence to support it, and then the decision is an abuse of discretion standard that applies. How to make those two standards, to rationalize them or put them, how they both apply in this case, it's beyond me to, I leave it to you. I'm glad that I'm not in your chairs on that one. But also I'd like to say on this issue, there was another element of self-defense about the imminent danger of violence. Of course the defendant testified that at the time the victim grabbed the bat, she had already dropped the fork. So whatever force, whatever was happening that resulted in the victim's injuries, she was not posing any threat of harm at that time. So we would argue that that's another element, that there is not some evidence of that element, and that's another reason that the instruction was properly denied. Isn't that a little far-fetched though? I guess I'm envisioning a situation where, you know, you're into an argument with someone and they're holding something and then you pick something up and they drop that and grab what you have. I'm not so sure that it's reasonable to conclude that the person is no longer a threat. It would be a stronger case if there was a greater time lapse in between the dropping of the fork and the wrestling over the bat. But that's something that maybe would lead into the abuse of discretion, how the trial court viewed that evidence. But this court, of course, the case does raise the issue of what is the standard and whether the self-defense instructions were properly refused. But, of course, the state would point out any error would be harmless because there's no reasonable probability that the jury would have reached a different result on the evidence that was presented, even if self-defense instructions were given. And for the same reasons that the state is arguing that there's not some evidence to support even giving the self-defense instructions, but also that the most that defendant and the victim testified, the victim did, was wave a kitchen fork at him. And she did not make any contact with that fork. And the jury viewed photos of the injuries that the victim sustained. There were bruises on her, the backs of her arms. One of the injuries was an open sore. So the evidence showed that he beat her with a bat in response to her waving a fork at her, which would be excessive and disproportionate force, which would negate self-defense. There were also other elements that the jury would rely on in rejecting his self-defense argument that would have negated self-defense, and that was his consciousness of guilt, his statements that he made when Officer Cookson asked to stop to talk to him. And he said, my name is Bobby Jimerson. Go ahead, take me to jail. After he ran into the residence away from the officer, the defendant also made statements saying, next time, statements to Cookson, next time I'll just kill that bitch and wait until I get out, I will beat her ass and you can come arrest me again. So that clearly indicates that he did not act in self-defense. And also the evidence that he had pleaded guilty to a prior domestic battery against the same victim, and that was properly admitted. So all of those things, even if this court would conclude that the instruction should have been given, it would be harmless error that it was not because there's no reasonable probability that the jury would have accepted his self-defense defense in light of the overwhelming evidence that he did not act in self-defense. As to the other issues, they're either forfeited, and the ones that are forfeited are not revealed. This court doesn't even have to reach them. They're forfeited, and the defendant hasn't established ineffective assistance or plain error. Those are issues two and four. And as to issue four, the things that the prosecutor did, it would have been better if the prosecutor had not asked or had not answered the defendant's question, what do you think, by saying, I think you beat her with a baseball bat. And it also would have been better if the prosecutor hadn't elicited testimony about whether or not the witnesses were lying. But the defendant is entitled to a fair trial, not a perfect trial. The cases that counsel relies on involve extensive prosecutorial misconduct, and that isn't standard. You don't reverse unless it's very pervasive. We don't have that here. And there's no reasonable probability that the jury would have relied on those things to convict the defendant. There was overwhelming evidence that he committed the offense and did not act in self-defense, which was not an issue. Unless the court has any further questions, we would simply ask that you refer. Thank you, Ms. Shepard. Ms. Borland, any rebuttal? Yes. The first thing, I have a few quotes that will take me just a second to read, but it does address the cases cited by the state, how the state has said that it amounts to no evidence when the defendant denies committing the act charged by the state. In every single case, it was truly no evidence because not only did the but it was also not clear in the state's case. For example, in both Lewis and Salas, the court denied the instruction because they said, unless the state's evidence raises the issue involving the alleged offense, the defendant bears the burden. Hawkins, where the accused denied firing the gun and where there is no testimony from the defendant's witnesses or the state's witnesses, which could be the basis for giving the instruction, he cannot have the instruction. And finally, Diaz, since the defendant's denied committing the acts and the state's evidence did not show that the defendant's use of force was justified, they could not have the instruction. So these all support here where Jimerson did provide a theory of self-defense, but also it was raised in the state's case. It shows clearly that there was some evidence in this case, and even the state's evidence alone was enough to give that instruction. In Everett, it is true that the court ultimately found that there was not sufficient evidence of self-defense presented, but in that case, the defendant testified specifically. He said the victim never touched him and never threatened him. The defendant also shot the victim as he was running away from the defendant. So those two facts, in addition with the fact that the defendant only claimed it was an accident, amounted to self-defense. But crucially, the entire issue, the ultimate holding of the court was the mere fact that he denied committing the offense itself was not enough to deny the instruction. And that's the end part of it in this case because here, Jimerson definitely did say force was necessary, and he was, all of whatever actions the jury found he did take, were still in the midst of a struggle that Jimerson said that Marshall caused, an attack that Marshall began. What about the state's argument that if there is error in failing to give the instruction, it's harmless? I would say, I have a few points on this. The first is, I guess it's very clear, if someone's coming after you with a fork and you've got a bat, it's kind of logical. I guess a simple analogy would be if someone's got a knife and you've got a gun handy, you're going to pick up the gun and threaten them with it. You want to win. You do feel threatened. It's really important that here, although there were injuries, this wasn't an extensive series of injuries inflicted. He never did hit her anywhere except her forearms. As soon as she fell down to the ground and the threat was eliminated, he stopped. He was out of the house. Moreover, his statements that he made after the offense, first of all, not telling the police, I'm Bobby Jimerson, go ahead and arrest me, that's not surprising because Marshall told him she was going to call the police. His second statements that he made in the car, those definitely show he was angry at Marshall. He says he should have, next time he'll do this, next time he'll do that. That's just as easily explained by someone who's angry over the fact that someone else came after him first and he's the one getting in trouble for that. Next time I won't walk away. It could be that. It could be what he meant by that. Or alternatively, again, he did dispute making those statements, so ultimately this all goes to the weight of the evidence. That was for the jury to decide. And here we believe that they could have found that he did use self-defense. And then finally, regarding the state's arguments that all of our prosecutorial misconduct arguments have been forfeited, we have cited cases showing that defense counsel isn't effective when he does not object to substantial prejudicial misconduct by the state. You do have to look at all of this stuff cumulatively where the state is even admitting that some of the stuff the prosecutor should not have done, that the prosecutor should not have done some of the acts she did in this case. When you look at all of that and you consider that this was a credibility case and that all of these errors went toward credibility, that does amount to plain error. And in the cases that we've cited where, for example, there being prosecutorial misconduct and they found plain error, it's not just whether the prosecutorial was extensive, but it's whether it's harmful. And here, since this was a credibility case, and since there was so much evidence designed to affect credibility, it could have affected the outcome of this case. So for those reasons, very briefly, we believe that the trial court took the central issue out of the jury's hands when it denied the self-defense instruction. Then from that point, when the issue turned into a credibility case, the prosecutor largely took that decision out of the hands through various forms of misconduct. So for those reasons and the additional reasons set forth in the brief, we would ask this court to grant Mr. Jemerson a new trial. Thank you, counsel. We'll take this matter under advisement and be in recess.